Mr. Corrales? Good morning, Your Honors. May it please the Court, Counsel, I'm Tom Corrales from the State Appellate Defender's Office. I represent Charles Lindsay, in this appeal. Mr. Lindsay was convicted after a jury trial of unlawful possession of a weapon by a felon, which I'll generally refer to as UPW by felon. He was sentenced to an eight-year term of imprisonment on the first of the two counts of that offense. In this appeal, we've raised two issues that pertain to the jury's judgment it had entered on count two, even though the Court did not impose a sentence on that count. Now, as to the two reasonable dollar arguments that I've raised, I intend to focus on the first issue only today. And in that issue, the defendant does not accept the assumption that a constructive theory of possession can support the UPW by a felon conviction. However, of course, I'll be happy to address any questions you have as to any of the issues in this case. The facts can be quickly summarized. The case came about as a result of a warrant search of a house, which was located on Proctor Street in Peoria. Now, the house had a second story with some bedrooms, but Mr. Lindsay was found on the lower level of the house in a bathroom at the time that the police executed the warrant. The gun, which became the focus of the UPW by felon charge, was found under a mattress in one of those second-floor bedrooms. Now, some of the exhibits that were admitted at trial were used to try and show proof of residency, including some utility bills, and none of those bore my client's name. The police did recover a renewal form for State of Illinois SNAP benefits, which was addressed to my client and had his address typed on the front page. That paperwork was found right underneath the handgun, which was on that second-story bedroom under the mattress. For purposes of whether the house on Proctor Street was my client's abode, it's important to note that that SNAP document, which we've appended to our brief as Appendix B, was addressed to Mr. Lindsay at an address on South Becker Lane, not on Proctor, where the gun was found. And the last fact that I think I should briefly mention, because it becomes a focus of the State's argument as to this first issue, and that is that Mr. Lindsay made a statement to one of the officers who spoke to him at the scene of the search, during which he admitted he spent the previous night at the house on Proctor Street, and that sometimes he would stay at this house with his friend Willie to give his grandmother a break. Now, Willie, to whom the defendant referred, was William Dillard, and he was one of the occupants of the house that day as well, and it was in his name that the police found some mail addressed to the Proctor Street residents. In response to our first reasonable doubt statutory construction type issue, the State claims that the defendant should be held to his specific theory of defense when he was defending at trial, and that was limited to an argument that the State did not prove beyond a reasonable doubt that he constructively possessed this handgun. Now, there is no support in the law for applying invited error or issue forfeiture to an argument that attacks the State's proof of an element of the offense that the State charged. The first argument simply concerns what needed to be proved to establish that the defendant was in violation of the UPW by a felon statute under the facts that came out at his trial. No other facts could have come up, even if the prosecutor in this case had seen an advanced copy of the first issue that I raised in this appeal. The statute under which my client was charged provides three different ways of violating the UPW statute for persons who have felony convictions, and the State did put all three of those in its indictment. They allege that Mr. Lindsay knowingly possessed a firearm on or about his person, or on his own land, or in his own abode. And that's the language that comes straight out of the statute. The State, however, proceeded at trial under a constructive possession theory only, in an attempt to try and prove the first of those ways of proving someone guilty of UPW by a felon. And the State had no other choice, really. They could not have succeeded under an actual possession theory. My client was found on a different floor than the floor that the gun was found. And they also could not have really tried to convince the jury that this was his own land or his own abode. The State attempts to go back and try and make something out of that statement that Mr. Lindsay made, that he was a once-in-a-while guest at Mr. Dillard's house. And to the effect that this is any attempt to show that this was the defendant's abode, it's just really not credible in the evidence in this case. So what we have here is the possession for UPW by a felon against a person not in his own home, not on his own land, and who didn't have a firearm on his person. The narrow question for this court, then, is does that suffice to prove a violation of the part of the statute that says a prior felon cannot possess a firearm on or about his person? Let me ask you, if I'm sleeping in a bed and there's a handgun between the mattress and the box frame, is that gun on or about my person? The first thing to look at there is to say you're not in your own home, because that would kind of undo the need to consider it. If you're in a hotel, I would say within reach would be appropriate. And I ask the court to consider the way the nonviolence statute has been construed, because that's the only case law that I've been able to find that has the honor about language. And in the nonviolence context, that would be okay. If it was within quick access to where you are. That's not on your person, but it covers about your person. If it had to be on your person, then we wouldn't need this or about language. I would agree, yes. So if I'm sleeping in a bed and there's a handgun between the mattress and the box frame, could it legally be said that gun was on or about my person? Yes, I think so. Okay, and so if the defendant was sleeping in the bed with the handgun on the bed, would that gun be on or about his person? If I understand the question, is at some point in the night before the police arrived, was he in violation? Are we talking like temporal? Well, that's exactly, and that's a good question. And that's if, do the police have to catch him with the gun on or about his person to convict him? Or do they only have to have evidence to show that at one point while he was a felon, he had a handgun on or about his person? There aren't many cases that people versus hair, which is actually one of the armed violence cases that's in my brief talk about that, you know, at an earlier point in time than when the police came upon the offender, he was closer to the, I think it was shotguns in that case. You know, the case law is not very clear on that, and this was not the theory of the prosecution, to be sure. Let me rephrase it. So some people come to the police and they say, hey, yesterday we saw Mr. Jones, who we know is a felon and you know is a felon, and he had a gun, he was carrying a gun. Isn't that against law? And we all saw him, or we saw him, we'll say we went to court and saw him carrying this gun yesterday. Could you convict him under this statute for having a felon gun on or about his person with that evidence? Yes. You put that in your charging instrument that on another day, or maybe the night before, when Mr. Lindsay showed up at this house on Proctor, witnesses testified, I saw him displaying the gun as he walked through the front door. That's not in the charge in this case. Well, the evidence is that he stayed at this house the night before, right? Yes. And in the bedroom, they found a handgun under a mattress of a bed with a man connected with his headdress, addressed to him but to another headdress, which would suggest somebody carried it from that other headdress down to Proctor Street and put it under the mattress with his handgun. So what was that circumstantial evidence that your client slept in that bed the night before, or put the handgun? Wasn't there testimony that your client slept on the couch? He didn't testify. He actually made a statement to that officer at the scene that, yes, he stayed at the house the night before. He slept on the couch. Did anybody put him in that bed? No. There was another person sitting on that bed. And there are three bedrooms on the second floor. Antonio Johnson was sitting on the bed when the police invaded the upstairs and arrested him. In addition to the recent correspondence, wasn't there a prescription bottle as well as a phone? There was a cell phone on the nightstand and there was a prescription pill bottle. And the correspondence all near the handgun? Not correspondence necessarily, but the application for benefits to have food stamps by the SNAP card. That was real near the gun and the pill bottle was actually further underneath the mattress. It also included, if you look closely on the video of the inventory of the search, it shows the Becker address on the pill bottle. So his prescription was to another location as well. But all these cluster of things were all around the same location? The phone, the pill bottle, the letter, and the handgun were in one room. All relating to him. I'm talking about the other items. The prescription relates to him. Yes, it does. The phone relates to him. Yes, it does. And the correspondence relates to him. Yes. All near the gun. Two of those were near the gun. Yes. But if you're reasonable inference then that was the bed he slept in the night before? It would be an inference that the jury could make. The state's theory in this case didn't rely on that and so the jury was not asked to make that conclusion. Why didn't they know what the jury relied on? Because the state argued constructive possession. The state did not argue prior point in time actual possession. And by arguing constructive possession, they considered the area within his immediate and exclusive control. They did use the fact that he had a phone in that bedroom, but it's kind of hard to imply that he had exclusive control when Antonio Johnson was the last person in the room. Well, but we review judgments not the reasons for judgments, right? Correct, yes. And that is whether the evidence is sufficient to support the judgment. Yes. This case, though, presents a fact scenario that hasn't been addressed in this state as to whether the honor about the person language means more than constructive possession at the time that the person is arrested. And, you know, I think it would be... Well, is that... I mean, I understand what you're saying, but is that distinction a lot of difference? I mean, if it's honor about the person, I think reasonable legal minds would say he possessed him, right? And if it's not on your person, but about your person, you're talking about constructive possession. Well, it is. Aren't we? Yes. I mean... There's no in between. There's no third option. You know, it's almost on. There is no, right? I think it's right. There are two choices, actual possession or constructive possession, correct? Right, right. So if it's in a locked safe in someone else's house and you're sitting on the safe, it's not constructive possession unless you can prove that you knew the combination, right? I mean, so it doesn't matter just that it's close. Or unless you can prove that that safe was open and you stuck it in there and slammed the door and spun the cell. If you have observers who can say they eyewitnessed that, that would be good. Thank you. Am I correct in understanding your argument that even if his fingerprint had been found on the gun, it would not be sufficient? No, I would not have made this argument if his fingerprint was on the gun. That was part of the defensive trial that, you know, they would not have needed a constructive possession in my mind at that point. They could have said actual possession at a different point in time. It's because they didn't have the fingerprint evidence that they couldn't, you know, kind of refute the possibility that Antonio Johnson had a gun in his waistband when he was on the roof trying to get away and the police ordered him back in the house and he took the gun out of his waistband and put it right underneath that mattress and said, oh, there's a letter too. That was a theory that they presented at trial. If my client's fingerprints were on that gun, that theory goes out the window and I think this wouldn't even have been raised. But I just want to say that the statute here was written to say that it's unlawful for a person to carry or possess, did not say that it is unlawful for a person to carry or possess a firearm. It used the words on or about his person. And the statutory construction analysis, I don't need to remind the court, is to not consider words in a statute as mere surpluses. There's reasons that the words are in that statute and if the legislature wanted this to read, you know, it's unlawful to carry or possess no matter where you are and then allow for constructive possession even in someone else's house, then the legislature could rewrite the statute. But it would only have an incentive to rewrite the statute if it sees a decision that says you didn't write it that way and we're not going to put the words there that you didn't put there just to uphold the conviction. So for those reasons, that's issue one. The defendant is asking Your Honors to reverse his conviction for unlawful possession of a weapon outright. Thank you, Mr. Brown. Mr. Hanson. Good morning, Your Honors. May it please the court, counsel. My comments will be terse. The law, section 24-1.1, prohibits felons from possessing firearms anywhere. It need not be in a given place. That's the Campbell, Gonzalez, Jackson, and Hester cases. Everything I'm saying here is cited in my brief. It's the state's public safety purpose to keep firearms from felons. That's the Allen case. That's reasonable and logical. The Garvin case is to the same effect. Gonzalez and Jackson both say a felon can't have a firearm in any situation. Adams found constructive possession was enough in a comparable situation. That defendant there was in the kitchen. The firearm was on top of a bedroom nightstand. The case law that I've cited to you says a felon with a firearm is violating the statute. For the sake of argument, as a secondary argument, we are arguing this was also the defendant's own abode. An abode includes places where the defendant has significant contacts through continuous or extended habitation. That's the Price case. In Price, it didn't apply because he was just an overnight guest. That's not here. The defendant said he stayed here from time to time to give his grandmother a break, from time to time. He had correspondence regarding SNAP benefits. I'm not exactly certain what SNAP is. It's some sort of government benefit. But that's kind of a financial significant document that the defendant had with him. That doesn't seem the type of thing you just happen to be carrying around in your pocket, but rather the type of thing you have in a place where you're prone to be, your abode. He had correspondence. He had that medication there. He had the phone bill there. Your Honors, we made all these arguments in our brief. I won't respond to Issue 2, as my opponent hasn't raised that in an oral argument. Unless you have any questions, that completes my point. How many felons were in the house? I don't know. So could any one of the other felons have been judged with possessing this particular gun? I don't know. You'd have to know more about it. This felon came in extremely handy because the gun was found under the mattress with the pill bottle, the correspondence, and the phone on the nightstand. The fact that another guy was found in there, I think that was, I forgot his name. It was some regular-sounding name. He had just fled there. It's not like there's any indication. As the police came, they saw that. They said they had seen him outside on the roof. He fled there. Yeah, came in another. So it's not like he was some long-term occupant of that room. But these points have been made in my brief. I just wanted to reiterate the main ones here. Any further questions? Okay. Thank you. Thank you, Your Honors. Mr. Corrales and Roboto. I don't think there's any need to. Okay. All right. Thank you both for your arguments here this morning. The matter will be taken under advisement. A written disposition will be issued. Right now, we'll be in a brief recess for a panel change.